No. 25-2144

---

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

CHICAGO WOMEN IN TRADES,
*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, President of the United Sates, et al.
*Defendants-Appellants.*

---

On Appeal from the United States District Court for the Northern
District of Illinois (No. 1:25-cv-02005)
The Honorable Matthew F. Kennelly, U.S. District Judge

---

## BRIEF OF APPELLEE CHICAGO WOMEN IN TRADES

---

Jason P. Stiehl
CROWELL & MORING LLP
455 N. Cityfront Plaza Dr.
Suite 3600
Chicago, IL 60611
(312) 840-3108
jstiehl@crowell.com

Anuj Vohra
Keith J. Harrison
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624-2500
avohra@crowell.com
kharrison@crowell.com

Warrington S. Parker III
CROWELL & MORING LLP
3 Embarcadero Center,
26th Floor
San Francisco, CA 94111
(415) 986-2800
wparker@crowell.com

Meshach Y. Rhoades
CROWELL & MORING LLP
1601 Wewatta Street
Suite 815
Denver, CO 80202
(303) 524-8660
mrhoades@crowell.com

Sabrina A. Talukder
Kathryn J. Youker
Dariely Rodriguez
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org
drodriguez@lawyerscommittee.org

Elizabeth E. Theran
NATIONAL WOMEN'S LAW CENTER
350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org
adervartanian@nwlc.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
CHICAGO LAWYERS' COMMITTEE
FOR CIVIL RIGHTS
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-2144</u>

Short Caption: <u>Chicago Women in Trades v. Donald J. Trump</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Chicago Women In Trades</u>

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Crowell & Moring LLP; Lawyers' Committee for Civil Rights Under Law;</u>

<u>Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF</u>

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

       <u>None</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       <u>None</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N.A</u>

Attorney's Signature: <u>/s/ Warrington Parker</u>     Date: <u>August 15, 2025</u>

Attorney's Printed Name: <u>Warrington Parker</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]   No [ ]

Address: <u>3 Embarcadero Center, 26th Floor, San Francisco, CA 94111</u>

Phone Number: <u>(415) 365-7234</u>      Fax Number: <u>(415) 986-2627</u>

E-Mail Address: <u>wparker@crowell.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2144

Short Caption: Chicago Women in Trades v. Donald J. Trump

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chicago Women In Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Crowell & Moring LLP; Lawyers' Committee for Civil Rights Under Law;

Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N.A

Attorney's Signature: /s/ Keith J. Harrison     Date: September 17, 2025

Attorney's Printed Name: Keith J. Harrison

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 1001 Pennsylvania Avenue, NW, Washington, DC 20004

Phone Number: 202-624-2560     Fax Number: 202-628-5116

E-Mail Address: kharrison@crowell.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2144

Short Caption: Chicago Women in Trades v. Donald J. Trump

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chicago Women In Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Crowell & Moring LLP; Lawyers' Committee for Civil Rights Under Law;

Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N.A

Attorney's Signature: /s/ Anuj Vohra      Date: September 17, 2025

Attorney's Printed Name: Anuj Vohra

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: 1001 Pennsylvania Avenue, NW, Washington, DC 20004

Phone Number: 202-624-2502      Fax Number:

E-Mail Address: avohra@crowell.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2144

Short Caption: Chicago Women in Trades v. Donald J. Trump

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Chicago Women In Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Crowell & Moring LLP; Lawyers' Committee for Civil Rights Under Law;

    Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N.A

Attorney's Signature: /s/ Jason P. Stiehl    Date: September 17, 2025

Attorney's Printed Name:  Jason P. Stiehl

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address:  455 N. Cityfront Plaza Drive, Suite 3600, Chicago, IL 60611

Phone Number: 312-840-3108    Fax Number:

E-Mail Address: jstiehl@crowell.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2144

Short Caption: Chicago Women in Trades v. Donald J. Trump

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chicago Women In Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Crowell & Moring LLP; Lawyers' Committee for Civil Rights Under Law;

Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N.A

Attorney's Signature: /s/ Meshach Y. Rhoades     Date: September 17, 2025

Attorney's Printed Name:  Meshach Y. Rhodes

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]  No [✓]

Address:  1601 Wewatta Street, Suite 815, Denver CO. 80202

Phone Number: 303-524-8660     Fax Number:

E-Mail Address: mrhoades@crowell.com

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-02144

Short Caption: Chicago Women in Trades v. Donald J. Trump, et al

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chicago Women in Trades

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

National Women's Law Center; Crowell & Moring, LLP; Lawyers' Committee for Civil Rights Under Law;

Chicago Lawyers Committee for Civil Rights; LatinoJustice PRLDEF;

(3)　If the party, amicus or intervenor is a corporation:

　　i)　Identify all its parent corporations, if any; and

　　None

　　ii)　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　None

(4)　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: _____　Date: 09/17/2025

Attorney's Printed Name: Sabrina Talukder

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☑　No ☐

Address: Lawyers' Committee for Civil Rights Under Law, 1500 K Street NW, Suite 900, Washington, D.C. 20036

Phone Number: (202) 662-8330　Fax Number: 202-783-0857

E-Mail Address: stalukder@lawyerscommittee.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-02144

Short Caption: Chicago Women in Trades v. Donald J. Trump, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chicago Women in Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Crowell & Moring, LLP; Lawyers' Committee for Civil Rights Under Law;

Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kathryn Youker    Date: Aug. 12, 2025

Attorney's Printed Name: Kathryn Youker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Lawyers' Committee for Civil Rights Under Law, 1500 K Street NW, Suite 900, Washington, D.C. 20005

Phone Number: (202) 662-8375    Fax Number: (202) 783-0857

E-Mail Address: kyouker@lawyerscommittee.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-02144

Short Caption: Chicago Women in Trades v. Donald J. Trump, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chicago Women in Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Crowell & Moring LLP; Lawyers' Committee for Civil Rights Under Law;

Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Dariely Rodriguez    Date: August 13, 2025

Attorney's Printed Name: Dariely Rodriguez

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Lawyers' Committee for Civil Rights Under Law, 1500 K Street NW, Suite 900, Washington, D.C. 20005

Phone Number: (202) 662-8600    Fax Number: (202) 783-0857

E-Mail Address: DRodriguez@lawyerscommittee.org

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-02144

Short Caption: Chicago Women in Trades v. Donald J. Trump, et al

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Chicago Women in Trades

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 National Women's Law Center; Crowell & Moring, LLP; Lawyers' Committee for Civil Rights Under Law;

 Chicago Lawyers Committee for Civil Rights; LatinoJustice PRLDEF;

(3)  If the party, amicus or intervenor is a corporation:

 i)  Identify all its parent corporations, if any; and

 None

 ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 None

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: _____  Date: 09/17/2025

Attorney's Printed Name:  Aneel L. Chablani

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address:  Chicago Lawyers' Committee for Civil Rights, 25 E. Washington St., Ste. 1300, Chicago, IL 60602

Phone Number: (312) 202-3658     Fax Number: 312-630-1127

E-Mail Address: achablani@clccrul.org

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-02144

Short Caption: Chicago Women in Trades v. Donald J. Trump, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Chicago Women in Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    National Women's Law Center; Crowell & Moring, LLP; Lawyers' Committee for Civil Rights Under Law;

    Chicago Lawyers' Committee for Civil Rights; LatinoJustice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: _Ami Gandhi_      Date: September 17, 2025

Attorney's Printed Name: Ami Gandhi

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☒

Address: Chicago Lawyers' Committee for Civil Rights Under Law, 25 E. Washington St., Ste. 1300, Chicago, IL 60602

Phone Number: (312) 888-4193      Fax Number:

E-Mail Address: agandhi@clccrul.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2144

Short Caption: Chicago Women In Trades v. Donald J. Trump et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Chicago Women In Trades

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Crowell & Moring. LLP; Lawyers' Committee for Civil Rights Under Law;

  Chicago Lawyers' Committee for Civil Rights; National Women's Law Center; Latino,Justice PRLDEF

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/Elizabeth E. Theran      Date: 8/22/2025

Attorney's Printed Name:  Elizabeth E. Theran

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]  **No** [✓]

Address:  National Women's Law Center, 1350 I St. NW Ste 700, Washington, DC 20005

Phone Number: 202-588-5180      Fax Number:  202-588-5185

E-Mail Address: etheran@nwlc.org

# TABLE OF CONTENTS

ORAL ARGUMENT STATEMENT ...................................................... vii

JURISDICTIONAL STATEMENT ........................................................ 1

INTRODUCTION ................................................................................. 1

STATEMENT OF THE ISSUES ............................................................ 5

STATEMENT OF THE CASE ............................................................... 6

    A.    Relevant Background on Appellee Chicago Women in Trades ("CWIT") and its Equity-Related Funding Sources ................................................................................ 6

    B.    The J20 and J21 EOs and the Certification Provision.......... 7

    C.    The Impact of the Certification Provision and the J20 and J21 EOs on CWIT ......................................................... 11

    D.    The District Court Proceedings ......................................... 13

SUMMARY OF ARGUMENT ............................................................. 17

ARGUMENT .................................................................................... 19

I.    STANDARD OF REVIEW .............................................................. 19

II.    CWIT HAS STANDING TO SUE ................................................... 20

    A.    CWIT Has Suffered an Injury in Fact ............................... 21

    B.    CWIT's Injury is Traceable to the Certification Provision and Redressable by a Judicial Order .................. 30

III.    THE CERTIFICATION PROVISION VIOLATES THE FIRST AMENDMENT ................................................................. 35

    A.    CWIT Is Likely To Succeed On Its First Amendment Claim ................................................................................. 35

B.    CWIT Is Likely To Succeed On Its First Amendment Claim Because The Certification Provision Proscribes First Amendment Activities................................................ 42

IV.   THE EQUITABLE FACTORS DO NOT FAVOR APPELLANTS AND THE INJUNCTION COMPLIES WITH *CASA* ........................................................................................... 43

CONCLUSION ..................................................................................... 48

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACLU of Ill. v. Alvarez,*
679 F.3d 583 (7th Cir. 2021)............................................................43

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.,*
570 U.S. 205 (2013).......................................... 1, 15, 35, 41

*Allen v. Wright,*
468 U.S. 737 (1984)................................................... 30, 34

*Babbit v. Farm Workers,*
442 U.S. 289 (1979)................................................... 22, 24

*Bauer v. Shepard,*
620 F.3d 704 (7th Cir. 2010)..............................................21

*Brown v. Kemp,*
86 F.4th 745 (7th Cir. 2023) .............................. 21, 24, 36, 39

*California v. Texas,*
593 U.S. 659 (2021).............................................. 32, 33, 34

*Chicago Women in Trades v. Trump,*
778 F. Supp. 3d 959 (N.D. Ill. 2025)...............................13, 35

*Common Cause Indiana v. Lawson,*
937 F.3d 944 (7th Cir. 2019)..............................................19

*Conservation L. Found., Inc. v. Acad. Express, LLC,*
129 F.4th 78 (1st Cir. 2025)...........................................33, 42

*Ezell v. City of Chi.,*
651 F.3d 684 (7th Cir. 2011)..........................................21, 39

*Fed. Election Comm'n v. Cruz,*
596 U.S. 289 (2022)...........................................................31

*Forsynth Cnty. v. Nationalist Movement,*
 505 U.S. 123 (1992) ......................................................... 18, 25, 37, 40

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York,*
 463 U.S. 582 (1983) ............................................................................ 41

*Kinney-Coastal Oil Co. v. Kieffer,*
 277 U. S. 488 (1928) ........................................................................... 45

*Lac Du Flambeau Band of Lake Superior Chippewa Indians*
 *v. Norton,*
 422 F.3d 490 (7th Cir. 2005) ......................................................... 34, 35

*In re Lisse,*
 905 F.3d 495 (7th Cir. 2018) ......................................................... 11, 47

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.,*
 148 F.3d 1231 (11th Cir. 1998) ........................................................... 33

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) ....................................................................... 21, 34

*Mahmoud v. Taylor,*
 145 S. Ct. 2332 (2025) ......................................................................... 21

*Majors v. Abell,*
 317 F.3d 719 (7th Cir. 2003) ............................................................... 21

*Massachusetts v. E.P.A.,*
 549 U.S. 497 (2007) ............................................................................. 20

*Meese v. Keene,*
 481 U.S. 465 (1987) ............................................................................. 31

*Nat'l Rifle Ass'n of Am. v. Vullo,*
 602 U.S. 175 (2024) ....................................................................... 36, 43

*Nat'l Urban League v. Trump,*
 Civ. Action No. 25-471(TJK), 2025 WL 1275613 (D.D.C.
 May 2, 2025) ................................................................................. 23, 39

*National Ass'n of Diversity Officers in Higher Educ. v. Trump,*
No. 25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29 ...................... 23, 39

*PFLAG, Inc. v. Trump,*
766 F. Supp. 3d. 535 (D. Md. Feb. 14, 2025) ...................................... 44

*Pit Row, Inc. v. Costco Wholesale Corp.,*
101 F.4th 493 (7th Cir. 2024) ...................................................... 28, 30

*Richwine v. Matuszak,*
--- F.4th ---, No. 24-1081, 2025 WL 2476656 (7th Cir. Aug. 28, 2025) ........................................................................................... 20

*Russian Media Grp., LLC v. Cable Am., Inc.,*
598 F.3d 302 (7th Cir. 2010) ............................................................. 20

*Rust v. Sullivan,*
500 U.S. 173 (1991) ........................................................................... 35

*San Francisco A.I.D.S. Found. v. Trump,*
Case No. 25-cv-01824-JST, 2025 WL 1621636 (N.D. Cal. June 9, 2025) .......................................................... 23, 39, 40, 43, 44

*Simic v. City of Chi.,*
851 F.3d 734 (7th Cir. 2017) ............................................................. 24

*Simon v. E. Kentucky Welfare Rights Org.,*
426 U.S. 26 (1976) ............................................................................. 31

*Soc'y of Divine Word v. United States Citizenship & Immigr. Servs.,*
129 F.4th 437 (7th Cir. 2025) ...................................................... 34, 35

*Speech First, Inc. v. Killeen,*
968 F.3d 628 (7th Cir. 2020) .................................................. 22, 24, 29

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .............................................................. 21, 22, 24

*Taylor v. Salvation Army Nat'l Corp.*,
   110 F.4th 1017 (7th Cir. 2024) .......................................... 30

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)...................................... 4, 5, 19, 43, 45

*United States v. Chemetco, Inc.*,
   274 F.3d 1154 (7th Cir. 2001) .......................................... 40

*United States v. NCR Corp.*,
   688 F.3d 833 (7th Cir. 2012) ............................................ 20

*Viriginia v. Black*,
   538 U.S. 343 (2003) ................................................... 16, 43

*Washington v. Indiana High Sch. Ath. Ass'n, Inc.*,
   181 F.3d 840 (7th Cir. 1999)............................................ 20

*Washington v. Trump*,
   Case, No. 2:25-cv-00244-LK, 2025 WL 509617 (W.D.
   Wash. Feb. 16, 2025)..................................................... 44

*Welsh v. Boy Scouts of Am.*,
   993 F.2d 1267 (7th Cir. 1993)........................................... 41

## Statutes

18 U.S.C. § 287 ................................................................. 8, 9

31 U.S.C. § 3729(a)(1)(G) ..................................................... 8

31 U.S.C § 3729(b)(4)............................................................ 8

## Other Authorities

13A Charles Alan Wright, Arthur Miller & Edward H.
   Cooper, *Federal Practice & Procedure* § 3531.5 (3d ed.
   2008) ............................................................................. 33

## ORAL ARGUMENT STATEMENT

Appellee believes that oral argument will materially assist the

Court in resolving the issues presented in this case.

# JURISDICTIONAL STATEMENT

Appellants' amended jurisdictional statement is complete and correct.

# INTRODUCTION

On January 20, 2025, President Trump issued Executive Order 14151, "Ending Radical and Wasteful Government DEI Programs and Preferencing" ("J20 EO"). The J20 EO declares diversity, equity, and inclusion "illegal and immoral discrimination." GA 48.

On January 21, 2025, President Trump issued EO 14173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity ("J21 EO"). He issued the J21 EO to end all "illegal DEI and DEIA policies."

These two executive orders bring into question *all* diversity, equity, and inclusion programs and activities as illegal under federal antidiscrimination laws. Appellants' statements and guidance issued within days of the two executive orders make this abundantly clear. For example, on January 21, Appellant United States Office of Personnel Management ("OPM") directed Executive Department Heads to "terminate any DEIA-related contractors." GA 60.

On January 22, Appellant Department of Labor ("DOL") told its grant recipients to "immediately" "cease" "all activities related to

'diversity, equity, and inclusion' (DEI), and 'diversity, equity, inclusion, and accessibility' (DEIA) under their federal awards, consistent with the requirements of the" J20 and J21 EOs. GA 97.

On February 5, Appellant Attorney General Pamela Bondi stated that the J21 EO made clear that "policies relating to" DEI and DEIA "'violate the text and spirit of our longstanding Federal civil-rights laws'" and that the Department of Justice would "investigate, eliminate, and penalize illegal DEI and DEIA preferences, mandates, policies, programs, and activities[.]" GA 76 (quoting J21 EO).

On the same day, OPM stated that "[u]nlawful discrimination related to DEI *includes* taking action motivated, in whole or in part, by protected characteristics." GA 120 (emphasis added).

Were there any doubt that this is indeed how Appellants interpret and intend to enforce the J20 and J21 EOs, one need only look to Appellants' "response" (or lack thereof) before the district court. Despite repeated opportunities to disavow or at least clarify their guidance and statements, Appellants "studiously declined" "to shed any light" on what types of DEI-related activities violate the J20 and J21 EOs. SA 25.

This appeal concerns one provision of the J21 EO referred to as the "Certification Provision." The Certification Provision requires federal grant recipients "to certify that [they] do[] not operate *any* programs promoting DEI that violate any applicable Federal anti-discrimination laws." SA 2-3 § 3(b)(iv); SA 24 (emphasis added). The Certification Provision also states that any such certification is material for purposes of the False Claims Act to any government payment decision. *Id.*

The district court concluded that Appellee Chicago Women in Trades ("CWIT") has standing to challenge this provision and that there is a substantial likelihood that this provision violates the First Amendment. Accordingly, it granted a nationwide preliminary injunction enjoining DOL from enforcing the Certification Provision.

Appellants maintain, again with no clarification or guidance from Appellant DOJ—the entity with enforcement authority here—that the Certification Provision only asks that grantees certify that they do not violate federal anti-discrimination laws. Thus, they reason, this provision complies with the First Amendment and CWIT has no standing to challenge its constitutionality.

Appellant's position strains credulity in light of the text of the J20 and J21 EOs. It strains credulity in light of Appellants' conduct and statements regarding what the Certification Provision means and how Appellants will enforce the Certification Provision. And it strains credulity in light of Appellants' studious refusal to provide any insight into what allegedly "illegal" DEI-related conduct the Certification Provision covers. In short, Appellants' position on appeal is a creature of this litigation, crafted post hoc and solely to avoid the preliminary injunction at issue.

In addition, CWIT is the proper party to challenge the Certification Provision. CWIT is a non-profit organization that prepares women to enter and remain in high-wage skilled construction trades. CWIT's mission is promoting diversity, equity, and inclusion so that women have an equal opportunity to obtain and hold those jobs without fear of discrimination. Its programming faces a credible threat that the Certification Provision will be enforced against it. And the provision chills CWIT's speech and forces CWIT to self-censor.

Appellants also contend that the district court's nationwide injunction cannot survive after *Trump v. CASA, Inc.*, 606 U.S. 831

(2025). However, the district court's decision to issue a nationwide injunction only against Appellant DOL aligns with *CASA*'s guidance. As *CASA* directs, the district court analyzed whether CWIT could be afforded complete relief without a nationwide injunction. Only after answering that question in the negative did the district court issue a nationwide injunction in this matter.

For these reasons, this Court should affirm the district court's decision to issue a nationwide injunction.

## STATEMENT OF THE ISSUES

1.      Whether the district court properly found that CWIT—a nonprofit that develops DEI-centered programming—has standing to challenge the Certification Provision as an infringement of its First Amendment rights.

2.      Whether the district court properly exercised its discretion when it concluded that an CWIT was entitled to enjoin enforcement of the Certification Provision.

3.      Whether the district court properly exercised its discretion when it determined, based on a weighing of the facts, that a nationwide injunction was necessary to provide CWIT with complete relief.

## STATEMENT OF THE CASE

### A. Relevant Background on Appellee Chicago Women in Trades ("CWIT") and its Equity-Related Funding Sources

CWIT is a non-profit organization that prepares women across the country to enter and remain in high-wage skilled construction trades (*e.g.*, carpentry, electrical work, welding, and plumbing). SA 2; GA 79 ¶¶ 3-15. These jobs are plagued by longstanding discrimination and occupational segregation. *Id.*

CWIT is dedicated to promoting diversity, equity, and inclusion, including breaking down the barriers faced by program participants identifying as Black and Latina. *Id.*

Federal funding, which comprises approximately forty percent of CWIT's annual budget, supports equity-related projects. For example, a DOL grant funds CWIT's "Transforming the Workforce System to Ensure Gender Equity in Infrastructure" program. SA 2-4; GA 84 ¶¶ 20-23. DOL grants also fund two of CWIT's apprenticeship programs. SA 4-5; GA 84-87 ¶¶ 24-28, 31-36.

The remainder of CWIT's annual budget is funded by private donors and non-federal grants. SA 2; GA 79 ¶¶ 16-18. CWIT uses all its grants and donations to provide training programs, best-practices

guides, employer resources, and advocacy to attract and retain women in skilled trades. SA 2; GA 79 ¶¶ 3-15. Accordingly, CWIT "'has provided technical assistance and gender equity training to industry stakeholders in all 50 states.'"  SA 2; GA 79 ¶¶ 3-15.

### B.    The J20 and J21 EOs and the Certification Provision

The first section of President Trump's J20 EO states that the prior administration's efforts to promote DEI "demonstrated immense public waste and shameful discrimination." *Id*. The second paragraph of the J21 EO states that DEI is "dangerous, demeaning, and immoral." GA 52. And the J21 EO calls DEI and DEIA policies "unlawful, corrosive, and pernicious identity-based spoils systems." *Id*.

The J20 and J21 EOs do not define "DEI," "DEIA," "diversity," "equity," "equity-related," or "inclusion." They do not explain how these terms can make conduct illegal. And they do not provide any insight into the contours of what DEI or DEIA activities are illegal and what are not.

***The Certification Provision*** is section 3(iv)(A) and (B) of the J21 EO. GA 53. It requires that "every contract or grant award" include two related provisions. *Id*. The first is a provision stating that the award

recipient agrees that its "compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of Title 31, United States Code." *Id*. The citation refers to the False Claims Act, violations of which can result in treble damages and penalties, and criminal charges. *See* 31 U.S.C. § 3729(a)(1)(G); 18 U.S.C. § 287. The Certification Provision also requires a provision in all contracts or grants stating that the award recipient "certify[ies] that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id*.

The ***OPM's January 21 Statement*** was shared via a memorandum to the "Heads and Acting Heads of Departments and Agencies." GA 59. It directed agency heads to (1) "terminate any DEIA-related contractors" and (2) by January 23, to provide OPM with "a complete list of all DEIA-related agency contracts as of November 5, 2024." *Id*.

***DOL's January 22 Statement*** came through an email from the DOL's Women's Bureau. GA 97. In addition to directing CWIT to "cease all activities related to" DEI, the email stated that that DOL "is

reviewing all active federal awards and will take appropriate action, including terminating the award" to comply with the J20 and J21 EOs. *Id.*

On January 22, DOL also issued ***Training and Employment Notice No. 21-24***. Invoking the J20 and J21 EOs, the notice directed "all recipients of federal financial assistance . . . to cease all activities related to 'diversity, equity, and inclusion (DEI) . . . consistent with the requirements" of the J20 and J21 EOs." GA 99.[1]

On January 27, Appellant Office of Management and Budget ("OMB") issued ***Memorandum M-25-13***, which instructed all federal agencies, as of January 28, 2025, to "temporarily pause all activities related to . . . financial assistance for . . . nongovernmental organizations, DEI, [and] woke gender ideology[.]" GA 65; GA 67 (OMB Fact Sheet of January 28, 2025).

Though the memorandum was soon thereafter rescinded following a court order, the White House Press Secretary stated that the freeze on

---

[1] Notice No. 21-24 was withdrawn and reissued several times, including being reissued on March 20 and then withdrawn on the day Appellants were asked to discuss its merits in the lower court. *See* March 25, 2025 hearing transcript (ECF 126), at 69:15-70:10; ECF 49.

federal funding for DEI-related activities would remain in place and be "rigorously implemented." GA 74.

**Attorney General Bondi's February 5 Statement** referencing the J21 EO called DEI un-American and declared all DEI to be illegal. The memo was addressed to all employees of the Justice Department. It stated that "President Trump issued [the J21EO] . . . making it clear that policies relating to 'diversity, equity, and inclusion' ("DEI") . . . "violate the text and spirit of our longstanding Federal civil-rights law" and "undermine our national unity." It vowed to use the DOJ's prosecutorial authority to target DEI activities by way of "criminal investigations," "litigation activities," and "[o]ther strategies to end illegal DEI and DEIA[.]" GA 76-77.

**OPM's February 5 Guidance** is entitled "Further Guidance Regarding Ending DEIA Offices, Programs and Initiatives." GA 121. It states that "[u]nlawful discrimination related to DEI includes taking action motivated, in whole or in part, by protected characteristics." It also provides that agencies should "eliminate Special Emphasis Programs that promote DEIA" and that agencies should "prohibit

[Employee Resource Groups] that promote unlawful DEIA initiatives[.]" GA 121-22.

Finally, on July 29, **Attorney General Bondi issued further guidance** to all federal agencies entitled "Guidance for Recipients for Federal Funding on Unlawful Discrimination." The guidance highlights "DEI programs" as creating "legal pitfalls" and suggests that "[t]he use of terms such as 'DEI.' 'Equity,' or other euphemistic terms" invites participants to discriminate. The guidance further identifies as examples of unlawful discrimination DEI policies that relate to scholarship funds, admissions, hiring, or promotion, and creating 'safe spaces' for "students of a specific racial or ethnic group."[2]

## C. The Impact of the Certification Provision and the J20 and J21 EOs on CWIT

CWIT felt the effects of the J20 and J21 EOs almost immediately after they were issued. On January 23, two days after the two executive orders issued, one of CWIT's primary federal contractors told CWIT that the J20 and J21 EOs required that it "pause immediately all

---

[2] CWIT asks that this Court take judicial notice of this guidance which can be located at https://www.justice.gov/ag/media/1409486/dl.  It is a public record.  A request for judicial notice is properly made in the brief on appeal.  *In re Lisse*, 905 F.3d 495, 496-97 (7th Cir. 2018).

activities directly tied to" federally funded DEI or DEIA work. SA 9. The primary contractor thus directed CWIT to stop "any future work" on its subcontracted DEI projects. GA 88.

The same primary contractor later terminated its contracts with CWIT because it felt that the subcontracts required the parties to "engage in activities no longer 'allowable'" under the J20 and J21 EOs. GA 133.

Additionally, CWIT has received communications from pass-through entities and partners requesting that CWIT engage in self-censorship. One pass through entity threatened to terminate a federal subgrant if CWIT did not remove all references to DEI or DEIA in an upcoming technical assistance program. GA 111. Because the training material was centered on diversity and equity and had the words "Diversity and Equity" in the title, the pass-through entity rejected the material. SA 14-15; GA 111 ¶¶ 13-16. Another partner asked that CWIT make a presentation without referencing DEI or including DEI content. SA 15; GA 88-89. And one of the grantees to which CWIT is a subawardee asked CWIT to modify its materials to remove any references to DEI. *Id*.

## D. The District Court Proceedings

CWIT asserted facial and as-applied challenges to the Certification Provision (and other provisions not the subject of this appeal) in a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction. *See* 1:25-cv-02005 ECF No. 40, 41, 45, 47, 49, 51 ("TRO Motion"); ECF No. 25, 26, 65 ("PI Motion"). The district court granted the TRO and later granted the PI Motion as to the Certification Provision. SA 1; ECF No. 68 (*Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959 (N.D. Ill. 2025)); ECF 69 (Order). The district court issued a nationwide preliminary injunction enjoining DOL from enforcing the Certification Provision based on CWIT's First Amendment claims.[3]

***Standing.*** The district court held that CWIT has standing because the J20 and J21 EOs and Appellants' associated statements ""indicate that enforcement is imminent." SA 15. With regard to the Certification Provision, the court found that CWIT had to modify its

---

[3] Because CWIT demonstrated a likelihood of success on the merits on its First Amendment claims, the court did not address CWIT's Fifth Amendment, separation of powers, or Spending Clause claims, which were also asserted as a basis for a preliminary injunction. SA 26.

activities immediately in anticipation of being required to certify. In the district court's words, "compliance with the Certification Provision . . . calls upon . . . CWIT to modify its activities and advocacy *now* so that it can make an appropriate certification to avoid having the axe fall." SA 15-16 (emphasis in original).

The court also concluded that the claims were ripe because CWIT established that it was harmed by the J20 and J21 EOs. SA 17. The court noted that CWIT's primary contractor had terminated its contracts with CWIT, and credited CWIT's proof that "every day that passes increases the risk of termination of [CWIT's] grants, and correspondingly, increases the pressure to self-censor." *Id.*

***Likelihood of Success.*** The court held that CWIT had established a likelihood of success on the merits of its First Amendment challenge to the Certification Provision. The court found (and Appellants admitted) that the clear intent of the Certification Provision was to "regulate [CWIT's] speech outside of their federally-funded programs." SA 24. Relying on Supreme Court authority, the court held that this violates the First Amendment, because "[a]lthough the government may use conditions to 'define the federal program,' it may

not 'reach outside' the program to influence speech." SA 24 (quoting *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 217 (2013)).

In reaching this decision, the court rejected the argument Appellants advance now: that the Certification Provision merely asks grantees to certify that they are not violating existing anti-discrimination law. According to the court, the J20 and J21 EOs do not define DEI and provide no indication of "what might make any given 'DEI' program violate Federal anti-discrimination laws." SA 25. Thus, the court observed, "the meaning of this is left entirely to the grantee's imagination." SA 25. In this regard, the court found that that "the thrust of the Orders is that the government's view of what is illegal . . . has changed significantly with the new Administration—even though the government has not (in the Orders) and has been unwilling to (in its briefs or at argument) define how it has changed." SA 25.

Moreover, the court held that the Certification Provision also forbids "promoting" illegal DEI and therefore violates "a bedrock First Amendment principle that advocating for violation of the law cannot be

proscribed unless it rises to incitement." SA 26 (citing *Viriginia v. Black*, 538 U.S. 343, 359 (2003)).

**The Scope of the Injunction.** The court recognized that the Certification Provision "likely will be in every contract and grant offered by an agency irrespective of whether the prospective recipient is protected under the injunction." SA 46-47. This is because the Certification Provision is written very broadly, covering every grant or contract an agency issues. *See id.*

Accordingly, the court ruled that a nationwide injunction is "necessary to ensure that CWIT is provided complete relief and to prevent infringement of the First Amendment rights of other grantees and contractors." SA 44.

The court also recognized that, because CWIT works with other organizations that may also provide what the government deems DEI-related programming, without such an injunction "CWIT will not be able to work with other recipients or sub-recipients unless they also eliminate whatever may be considered as DEI-related efforts." SA 46.

Thus, the court stated, a preliminary injunction limited to CWIT "still would impact any prospective grant recipient who might want to

work with CWIT," and any steps required of a prospective grantee would lead to "a strong likelihood that the prospect of such disclosure [of non-grant related advocacy related to DEI] would chill any prospective fund recipient from partnering with CWIT." SA 47. "In such situations, CWIT would suffer the consequences." SA 47.

## SUMMARY OF ARGUMENT

At bottom, Appellants make just one argument about CWIT's standing to sue and its likelihood of success in proving that the Certification Provision violates the First Amendment. Over and again, Appellants insist that the J21 EO did not change what they and this Administration interpret as the scope of federal antidiscrimination laws.

This argument rings hollow. It ignores that the President signed two unprecedented and far-reaching EOs within weeks of entering the Oval Office. It is also disingenuous; as noted above, Appellant U.S. Attorney General issued a statement declaring that the J21 made clear that all DEI policies violated federal antidiscrimination laws. She also vowed to enforce the J21 EO with criminal investigations and litigation accordingly.

Appellants' pre-litigation statements speak loud and clear. This Court "must consider" them when assessing whether the Certification Provision violates the First Amendment. *Forsynth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (concluding that an ordinance violated the First Amendment and stating "we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it").

The district court did just this, which is why it had no trouble rejecting the same arguments Appellants now make on appeal. SA 25 (observing that the Trump Administration significantly changed the "government's view of what is illegal . . . even though the government has . . . been unwilling to . . . define how it has changed").

Because CWIT engages in conduct that promotes DEI, it rightly fears the Certification Provision will be applied to it. That it has not happened yet is of no moment. The law allows a court to issue preliminary injunctions precisely to avoid a law's application. Moreover, absent an injunction the Certification Provision would injure CWIT. It "calls upon . . . CWIT to modify its activities and advocacy

*now* so that it can make an appropriate certification to avoid having the axe fall." SA 16.

As for the First Amendment, Appellants acknowledge that the Certification Provision imposes a condition on CWIT's non-federally funded activities and programs. This violates the First Amendment. Worse yet, it is viewpoint-specific: It only seeks to prevent programs that promote DEI. And finally, as illustrated by Appellants' inconsistency as to what the Certification Provision means, the provision is void for vagueness and violates the First Amendment.

Finally, the district court issued a nationwide injunction because it was necessary to provide CWIT full relief. Although the court rendered its decision before the Supreme Court decided *CASA*, it did so in a manner consistent with *CASA*'s holding.

## ARGUMENT

### I. STANDARD OF REVIEW

Whether a party has standing is a legal question reviewed *de novo*. *See, e.g., Common Cause Indiana v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019). The district court's factual determinations necessary to resolve the issue of standing are reviewed for clear error. *Id.*

This Court will not reverse a district court's grant of a preliminary injunction absent a clear abuse of discretion. *Richwine v. Matuszak*, --- F.4th ---, No. 24-1081, 2025 WL 2476656, at * 5 (7th Cir. Aug. 28, 2025).

This Court "review[s] the district court's legal conclusions de novo, its findings of fact for clear error, and its balancing of the harms for an abuse of discretion." *Id.* A district court's "balancing of harms is a highly discretionary matter and therefore one to which this court must give substantial deference." *United States v. NCR Corp.*, 688 F.3d 833, 843 (7th Cir. 2012) (quoting *Washington v. Indiana High Sch. Ath. Ass'n, Inc.,* 181 F.3d 840, 845 (7th Cir. 1999)).

Finally, "an injunction must . . . be broad enough to be effective, and the appropriate scope of the injunction is left to the district court's sound discretion." *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010).

## II.    CWIT HAS STANDING TO SUE

A party has constitutional standing to sue if it has (1) suffered a concrete and particularized injury that is actual or imminent (i.e., an injury in fact), (2) which is fairly traceable to the defendant's conduct and (3) likely to be redressed by a favorable decision. *See Massachusetts*

*v. E.P.A.*, 549 U.S. 497, 517 (2007); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

Moreover, "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2358 (2025). There is no "need to 'wait and see' . . . before evaluating [ ] First Amendment claims." *Id.* at 2358. "[T]he threat is latent in the existence of the statute." *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003). Indeed, "[t]he very 'existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purposes of standing.'" *Ezell v. City of Chi.*, 651 F.3d 684, 695-96 (7th Cir. 2011) (quoting *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010)).

## A. CWIT Has Suffered an Injury in Fact

"When an individual is subject to [ ] a threat," of government enforcement action, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) ("A party who is the target of an

unconstitutional law need not expose [itself] to liability before challenging its constitutionality if there are 'circumstances that render the threatened enforcement sufficiently imminent.'"(quoting *Driehaus*, 573 U.S. at 158-59)).

There are two ways in which a plaintiff can establish a pre-enforcement injury in fact. First, the plaintiff can show "an intention to engage in a course of conduct arguably affected by a policy, and that [it] faces a credible threat the policy will be enforced against [it] when [it] does" engage in this conduct. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020); *Driehaus*, 573 U.S. at 159 ("a plaintiff satisfies the injury-in-fact requirement where [it] alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" (quoting *Babbit v. Farm Workers*, 442 U.S. 289, 298 (1979))). Second, the plaintiff can "show a chilling effect on [its] speech that is objectively reasonable, and that [it] self-censors as a result." *Speech First*, 968 F.3d at 638.

CWIT proved both.

### 1. CWIT Engages in Conduct That Falls Within the Scope of the Certification Provision

CWIT is a recipient of federal grants. It promotes equity and DEI-related activities with both federal and non-federal monies. It intends to "continue to pursue its 'mission . . . to achieve gender equity in male-dominated industries'" and "allocate[e] its 'non-federal funding . . . towards work related to diversity, equity, inclusion, and accessibility.'" GA 90-91. Its activities necessarily fall within the scope of the Certification Provision. *See* Statement of the Case § A.

Appellants do not contend otherwise—instead, they claim that this is not enough. They argue that the Certification Provision poses no First Amendment issue because it only requires a certification that CWIT does not "*violate any applicable Federal anti-discrimination laws,*" App. Br. at 19 (emphasis in original).[4] Therefore, they assert,

---

[4] Appellants cite three decisions holding that the Certification Provision does not violate the U.S. Constitution to contend that CWIT lacks standing. App. Br. at 20. In none of those cases was standing successfully defeated, so they are no help to Appellants. *See National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29 ("*Higher Educ.*"); *Nat'l Urban League v. Trump*, Civ. Action No. 25-471(TJK), 2025 WL 1275613, at *11-12 (D.D.C. May 2, 2025); *San Francisco A.I.D.S. Found. v. Trump*, Case no. 25-cv-01824-JST, 2025 WL 1621636, at *10-11 (N.D. Cal. June 9, 2025).

CWIT did not establish standing because it did not evince an intent to engage in conduct that would "violate federal antidiscrimination law." App. Br. at 17-18.

This argument fails for multiple reasons. First, it misstates the test: standing only requires a showing of "an intention to engage in a course of conduct *arguably* affected by a policy[.]" *Speech First*, 968 F.3d at 638 (emphasis added). CWIT need not attest that it does or will violate the law. *See Kemp*, 86 F.4th at 764, 766 (the plaintiffs did not "intend to impede or obstruct hunting" while monitoring wolf hunters, yet "[t]heir conduct [was] at least arguably within the statute's prohibitions."); *see also Babbit*, 442 U.S. at 301-02 (standard met in challenge to a prohibition on dishonest publicity even though no "plans to propagate untruths."); *Driehaus*, 573 U.S. at 161-62 (standard met when challenged Ohio law proscribed "false statement[s]" during political campaigns despite the petitioners never claiming an intent to make false statements in their political advocacy).[5]

---

[5] Appellants cite *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017), where the court refused to find standing because it was not assured plaintiff would use a cell phone each time she drove her car. Mot. at 18. Therefore, the threat of future injury was conjectural. Driving a car with (Continued…)

Second, as a factual matter, the Certification Provision "arguably" covers CWIT's conduct because CWIT's equity-related programming "promot[es] DEI." Given Appellants' repeated proclamations that promoting DEI constitutes a violation of federal law—which they have never disavowed—they cannot credibly maintain otherwise before this Court. *See Forsyth Cnty.*, 505 U.S. at 131; *see also* Argument § III, A; Statement of the Case § B.

### 2. CWIT Faces an Objectively Reasonable and Credible Threat of Enforcement

Appellants have shown through words and deeds that they intend to enforce the J20 and J21 EOs, including the Certification Provision. For example, Appellant Bondi, the head of the agency charged with enforcing the False Claims Act, issued a statement on February 5 that specifically references the J21 EO and declared that the J21 EO made all DEI illegal. GA 76-77. She further promised to use the DOJ's prosecutorial authority to target DEI activities by way of "criminal

---

a cell phone is not immutable. CWIT's diversity, equity, and inclusion efforts are immutable to it.

investigations," "litigation activities," and "[o]ther strategies to end illegal DEI and DEIA[.]" *Id.*

Nor does CWIT stand alone in recognizing a credible threat of enforcement of the J20 and J21 EOs. As the district court found, within days of the EOs's issuance, one of CWIT's primary federal contractors told CWIT that the J20 and J21 EOs required that it "pause immediately all activities directly tied to" federally funded DEI or DEIA work. SA 9. The same primary contractor later terminated its contracts with CWIT because it felt that the subcontracts had the parties "engage in activities no longer 'allowable'" under the J20 and J21 EOs. GA 133.

In addition, the Certification Provision chills CWIT's speech and forces CWIT to self-censor. As CWIT's Executive Director explained in her Declaration, "CWIT has lost its ability to do and promote its work without fear of violating these EOs" "because of the" J20 and J21 EOs. GA 88-89. And CWIT has "lost partnerships with other organizations because of the" J20 and J21 EOs. GA 29; *see also* Statement of the Case § C.

In fact, as the district court found, the Certification Provision has already done harm enough, even in the absence of further enforcement,

because it "calls upon a grantee like CWIT to modify its activities and advocacy *now* so that it can make an appropriate certification to avoid having the axe fall." SA 16. CWIT has already lost partnership and has been asked by partners to self-censor its message due to fears about what the J20 and J21 EOs mean. *See* Statement of the Case § C.

Viewed in this light, there is no merit to Appellants' contention that the district court clearly erred by giving inappropriate significance to DOL communications focusing on the non-certification provisions of the J20 and J21 EOs. App. Br. at 20-22. First, the record establishes the threat of enforcement independent of DOL communications. For example, the February 5 Bondi Statement focuses specifically on the enforcement of the J21 EO without excepting the Certification Provision. GA 76-77. Second, as explained above, Appellants have made clear their intention to enforce the EOs in their entirety, including the Certification Provision. *See* Statement of Facts § B.

In any case, CWIT did not need to establish that the Certification Provision "was the most immediate cause, or even a proximate cause, of the plaintiffs' injuries." Rather, it is enough that it showed a "meaningful connection between" the Certification Provision and the

injury. *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th Cir. 2024); *see also* Argument, Section II, B.

Likewise meritless is Appellants' claim that any chilling effect on CWIT is not objectively reasonable because CWIT "erroneous[ly] belie[ves] that the Certification Provision implicates *every* "program[] that promote[s] DEI." App. Br. at 23-24 (italics and brackets in original). By its very terms, the Certification Provision implicates every CWIT program whether or not that program promotes DEI and whether or not funded by federal dollars. Appellants admit that the Certification Provision governs all of CWIT's federally-funded and non-federally funded programs. This means it necessarily covers CWIT's DEI-related programming.

As for Appellants' claim that the Certification Provision does not impact "legal programs," including "legal DEI," that argument is disingenuous. Attorney General Bondi's February 5 memorandum declares all DEI-policies illegal because they violate federal civil rights laws. So, the agency charged with enforcement of the False Claims Act has declared that there is no legal DEI.

Moreover, were this true, Appellants would have provided some way of closing the gap between what Appellant Bondi wrote in February and their current litigation provision. As an example, Appellants would have defined "illegal DEI." They refused to do so. *See* Statement of the Case § B.

Nor did the district court clearly err when it concluded that CWIT self-censored. *See* App. Br. at 24-26. As a factual matter, the record amply demonstrates self-censorship, including that tied to the Certification Provision. SA 15-16; SA 25-26; Statement of the Case § C.

Finally, Appellants misapprehend the law. CWIT need not "identify a program that is neither federally funded nor illegal and explain that it 'planned or wished to plan to sponsor [that program] in the future' but has refrained from doing so because of the Certification Provision[.]" App. Br. at 26 (citing *Speech First*, 968 F.3d at 639-40)).

*Speech First* does not require CWIT to identify a program that it has declined to pursue; it only requires that a plaintiff has a particularized injury in fact, which CWIT has proven. *Speech First*, 968 F.3d at 640; *see* Statement of Facts §§ C, D. As this Court held in *Speech First*, the student-organization plaintiff could not show that it

suffered an injury in fact because it pointed to no specific statement it would have made were it not for the University's policy. *Id*.

Accordingly, this Court should affirm the district court's ruling that CWIT suffered an objectively reasonable injury in fact.

## B. CWIT's Injury is Traceable to the Certification Provision and Redressable by a Judicial Order

***Traceability.*** "The traceability element of Article III standing 'examines the causal connection between the assertedly unlawful conduct and the alleged injury.'" *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). To satisfy that burden, a plaintiff need not establish that the defendant's conduct was the most immediate cause, or even a proximate cause, of the plaintiffs' injuries. Rather, there must simply be a "meaningful connection between" the conduct and injury. *Pit Row*, 101 F.4th at 502.

There is ample proof of "meaningful connection between" the Certification Provision and CWIT's injury in fact. The threat of government enforcement arises directly from the Certification Provision's promises of civil and criminal liability for those who fail to certify properly. *See* Statement of the Case § B. Attorney General

Bondi's February 5 statement confirms that enforcement efforts are real. *See id.*

These facts satisfy the traceability element. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022) (holding that the Bipartisan Campaign Reform Act's temporal limitation on certain loan repayments is fairly traceable to plaintiff's inability to receive funds; stating that "we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application…"); *Meese v. Keene*, 481 U.S. 465, 476 (1987) ("Because the alleged injury stems from the Department of Justice's enforcement of a statute that employs the term 'political propaganda,' we conclude that the risk of injury to appellee's reputation 'fairly can be traced' to the defendant's conduct." (quoting *Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 41 (1976))).

Appellants argue—based without legal authority—that CWIT's injury is not traceable to the Certification Provision because "the civil rights laws will apply to CWIT by their own terms whether or not [CWIT] is required to certify compliance as a condition of receiving federal funds." App. Br. at 21.

This argument fails for two reasons. First, it misstates the traceability test, which only asks if there is a "meaningful connection" between the government's conduct and the plaintiff's injury, not whether the plaintiff's injury could only derive from the government's conduct and nowhere else. Also, it mischaracterizes CWIT's injury, which is not that CWIT must comply with antidiscrimination laws. Rather, CWIT's injury is that it may be subject to a law that, as explained *supra*, arguably covers its conduct, forces it to self-censor, and could subject it to civil damages and penalties and criminal prosecution. *See also* Argument § III.

Appellants also argue that CWIT cannot show that its injury is traceable specifically to the Certification Provision, as opposed to "the overall effect of multiple executive orders," CWIT's evidence is "insufficient to establish standing to challenge the Certification Provision in particular." App. Br. at 25-26 (citing *California v. Texas*, 593 U.S. 659, 680 (2021)). Appellants again ignore that the traceability test is not a sole-causation standard—it only asks if there is a "meaningful connection" between the Certification Provision and CWIT's injury.

As a matter of law, the existence of injuries attributable to additional provisions does not vitiate CWIT's standing to challenge the Certification Provision. *See Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 90 (1st Cir. 2025) ("A plaintiff can satisfy traceability by showing 'that the defendant's conduct is one among multiple causes' of the alleged injury.") (quoting 13A Charles Alan Wright, Arthur Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.5 (3d ed. 2008)); *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1247 (11th Cir. 1998) ("[S]tanding is not defeated merely because the alleged injury can be fairly traced to the actions of both parties and non-parties.").

Finally, *California v. Texas* does not hold or counsel otherwise. There, the Supreme Court held that the plaintiffs failed to show that the Affordable Care Act's ("ACA") minimum essential coverage provision caused them any injury. Instead, the plaintiffs showed only that different provisions of the ACA caused them economic injury. 593 U.S. at 675-80. Because the challenged provision caused *no* injury, the plaintiffs "failed to show a concrete, particularized injury fairly traceable to the defendants' conduct in enforcing the specific statutory

provision they attack as unconstitutional." *Id.* at 680. In contrast, CWIT has shown that the Certification Provision specifically is traceable to CWIT's injury. It just so happens that other provisions of the J20 and J21 EOs also injure CWIT.

**Redressability.** "Redressability 'examines the causal connection between the alleged injury and the judicial relief requested.'" *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 501 (7th Cir. 2005) (quoting *Allen*, 468 U.S. at 753 n. 19). "An injury is redressable if it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks." *Soc'y of Divine Word v. United States Citizenship & Immigr. Servs.*, 129 F.4th 437, 447 (7th Cir. 2025) (quoting *Lujan*, 504 U.S. at 561).

Appellants yet again argue that because "the civil rights laws will apply to CWIT by their own terms whether or not [CWIT] is required to certify compliance as a condition of receiving federal funds," a judicial order would not redress CWIT's injury. App. Br. at 21. But, again, as explained *infra*, Argument § III, CWIT's injury is not that it must comply with the civil rights laws.  The injury is that the Certification Provision unconstitutionally controls CWIT's speech and violates the

First Amendment. The Certification Provision puts CWIT in an

impossible position. On the one hand, CWIT may refuse to certify that

its DEI-related programs do not violate "antidiscrimination laws"

within the provision's meaning—devoid of any guidance as to what the

government believes the key terms of the J21 EO even mean. Or, CWIT

may certify that its programs do not violate antidiscrimination laws and

risk civil or criminal prosecution. *See Norton*, 422 F.3d at 502

("Redressability . . . depends upon the relief requested, not the relief

LDF could prove it was entitled to on the merits); *Soc'y of Divine Word*,

129 F.4th at 447 (same).

## III. THE CERTIFICATION PROVISION VIOLATES THE FIRST AMENDMENT

### A. CWIT Is Likely To Succeed On Its First Amendment Claim

The Certification Provision imposes an unconstitutional condition.

"The government has wide latitude in making funding decisions."

*Chicago Women in Trades*, 778 F. Supp. 3d at 983 (citing *Rust v.*

*Sullivan*, 500 U.S. 173, 193 (1991)). But "the government may not use

funding conditions to regulate speech generally." *Id*. The government

"may not 'reach outside' the program" that it is funding "to influence

speech." *Id*. (quoting *Agency for Int'l Dev.*, 570 U.S. at 217. "[F]unding

condition[s] can result in an unconstitutional burden on First Amendment rights" when the government goes beyond "defining the limits of the Government spending program" and extends to "leverag[ing] funding to regulate speech outside of the contours of the federal program itself." *Id.* at 206.

The Certification Provision violates the First Amendment because it leverages the government's funding power to regulate non-federally funded speech. SA 24. The Certification Provision requires grantees to certify that all their programs, including those that receive no federal funds, do not "promot[e] DEI that violate any applicable Federal anti-discrimination laws." *Id.* This is plain from its text, and Appellants admitted as much. *Id.*

The Certification Provision additionally imposes a viewpoint-specific restriction. It requires certification for activities promoting DEI, but not activities promoting an opposition to DEI. As such, it is a particularly pernicious violation of the First Amendment rights of CWIT. *See Brown*, 86 F.4th at 774; *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024) (noting that "[a]t the heart of the First

Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society").

Finally, the Certification Provision violates the First Amendment because it gives Appellants free rein to enforce the EOs without the constraint they now claim. While on appeal, Appellants claim that the J21 EO made no change to existing antidiscrimination laws, that is not how Appellants interpreted or declared how they would enforce the J21 EO. According to Appellant Bondi, the J21 EO made clear all DEI policies violated civil rights laws. And she promised to enforce it accordingly. GA 76-77. Appellants implicitly ask this Court to disregard these facts, it cannot. This Court "must consider [Appellants'] authoritative constructions of the [EOs], including its own implementation and interpretation of" them. *Forsynth Cnty.*, 505 U.S. at 131 (finding that an ordinance violated the First Amendment given the construction of the ordinance by those charged with its enforcement).

The district court too recognized that Appellants could not walk away from their own pre-litigation pronouncements regarding the scope of the J20 and J21 EOs. The court noted that "the government's view of

what is illegal . . . has changed significantly . . . ." SA 25. And the

district court found of First Amendment significance that Appellants

"studiously decline to shed light" on what illegal DEI means. SA 25; *see*

*also id.* (noting Appellants' unwillingness to define terms).

Given this, there is no merit to Appellants' argument that the

Certification Provision does not violate the First Amendment because

"it imposes no new requirements on CWIT's primary conduct." App. Br.

at 27; *see also id.* at 30-32. Nor is there merit to the contention that the

Certification Provision neither requires certification that "CWIT does

not advocate for DEI" nor that CWIT "does not advocate for violations of

the law." *Id.* at 27-28. Not even Appellants consider it so cabined. *See*

*also* Statement of Facts § B.

Because the Certification Provision violates the First Amendment,

Appellants also cannot credibly argue that the Certification Provision

presents no First Amendment issue based on the assertion that were a

False Claims Act investigation or claim brought CWIT could assert as a

defense a good faith mistake or a "reasonable but erroneous

interpretation of [its] obligations." App. Br. at 31. "A party who is the

target of an unconstitutional law need not expose himself to liability

before challenging its constitutionality . . . ." *Brown*, 86 F.4th at 761;

*see also Ezell*, 651 F.3d at 695-96 ("The very 'existence of a statute

implies a threat to prosecute, so pre-enforcement challenges are proper,

because a probability of future injury counts as 'injury' for the purposes

of standing.'" (citations omitted)).

A few courts have held that the Certification Provision's text is

likely limited to conduct that violates existing antidiscrimination laws.

*See National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No.

25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29 (slip op.) (hereinafter

*NADOHE*); *Nat'l Urban League,* 2025 WL 1275613; *S.F. A.I.D.S.

Found.*, 2025 WL 1621636) (hereinafter *SFAF*).  Of course, none of

these decisions bind this Court.  They also lack even persuasive value

due to the nature of the reasoning behind their conclusions. Judge

Harris offers none in her *NADOHE* concurrence. *See NADOHE* slip op.

at 7.  The *National Urban League* court reaches this interpretation

based on the "face" of the provision alone and includes no deeper

analysis of the text or the government's pre-litigation interpretation of

the EOs. *Nat'l Urban League*, 2025 WL 1275613, at *24. And the *SFAF*

district court looked to other provisions of the J21 EO to understand

how to interpret the Certification Provision's text, while disregarding the government's pre-litigation interpretation of the EOs. *SFAF,* 2025 WL 1621636, at *19.

In contrast, this Court can and should look at the text of the Certification Provision, the wider text of the J20 and J21 EOs, Appellants' statements and conduct, and Appellants' "studious" silence before the district court to conclude that the Certification Provision does impose new requirements. *See Forsyth Cnty.*, 505 U.S. at 131; *see also* Statement of the Case §§ B, D.

Next, Appellants argue that the Certification Provision is merely an "assurance of compliance" with federal antidiscrimination law and has no independent significance. App. Br. at 27-28. At any point in this litigation (or in pre-litigation statements or documents), Appellants could have acknowledged that some DEI activity is lawful under existing statutes, but they have not. Instead, they ask this Court to ignore how they urged the J21 EO should be interpreted before this litigation.

Furthermore, it is not appropriate to construe government edicts to bear no meaning. *See United States v. Chemetco, Inc.*, 274 F.3d 1154,

1160 (7th Cir. 2001) (noting that "generally a court should not construe a statute in a way that makes words or phrases meaningless or superfluous") (cleaned up); *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1272 (7th Cir. 1993) (noting that "a court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous").[6]

Finally, Appellants argue that *Agency for International Development* does not apply because it stands for the proposition that when conduct is protected by the First Amendment, the government "may not impose a funding condition that 'effectively prohibit[s] the recipient from engaging in the protected conduct outside the scope of the federally funded program." App. Br. at 32. (quoting *Agency for Int'l Dev.*, 570 U.S. at 218-19)). They maintain that, because the Certification Provision does nothing more than direct grantees to not

---

[6] Appellants cite Justice Marshall's dissent in *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983), in support of this proposition. However, Justice Marshall's point in that case was that mandates written into statutes *must* be read to have meaning, especially when their meaning "can hardly escape notice." *Guardians Ass'n*, 463 U.S. at 629 (Marshall, J. dissenting). This argument supports CWIT's position that the Certification Provision is more than mere surplusage.

violate existing legal obligations, *Agency for International Development* is inapplicable because "there is no First Amendment right to actually violate federal civil rights laws." *Id.*

But, for the reasons already explained, this argument holds no water. Far from merely directing grantees to not violate federal civil rights laws, the Certification Provision proscribes an amorphous swath of conduct, never before deemed illegal, that the government steadfastly refuses to define. *See* Statement of the Case §§ B, D; *see also* Argument § I.

## B. CWIT Is Likely To Succeed On Its First Amendment Claim Because The Certification Provision Proscribes First Amendment Activities

The district court named another reason why CWIT's First Amendment claim is likely to succeed on the merits: "The J21 Order's reference to 'programs promoting DEI,' [ ] is fairly read as an *express* reference to First Amendment-protected speech and advocacy. Even if the Certification Provision is limited to promoting whatever the government may now contend is 'illegal DEI,' it is a bedrock First Amendment principle that advocating for violation of the law cannot be

proscribed unless it rises to incitement." SA 26 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)).

*SFAF,* which Appellants cite, concluded that the Certification Provision does not operate to prevent advocacy because it only prohibits operating a program that violates anti-discrimination laws. *See* 2025 WL 1621636, at *20. But, respectfully, the *SFAF* court got this wrong. The Certification Provision prohibits *promoting any* DEI activities, even those run by others. *See* Statement of the Case § B. CWIT could not, therefore, operate a program whose sole purpose is to "promote"— advertise for, advocate in support of—a DEI program run by a third party. This is a violation of the First Amendment.

And because the Certification Provision is viewpoint specific, it poses a "uniquely harmful" violation of CWIT's First Amendment rights. *See* Argument § II, A; *Vullo*, 602 U.S. at 187.

## IV.  THE EQUITABLE FACTORS DO NOT FAVOR APPELLANTS AND THE INJUNCTION COMPLIES WITH *CASA*

The government cannot show irreparable harm from an injunction. First, it cannot be harmed by being unable to enforce restrictions likely to be found unconstitutional. *ACLU of Ill. v. Alvarez*, 679 F.3d 583,

589–90 (7th Cir. 2021). Furthermore, the injunction requested here would not prevent the Executive from taking any number of lawful actions to implement the President's priorities, including promulgating regulations, proposing legislation, or taking litigation positions. *See SFAF*, 2025 WL 1621636. If you accept Appellants' argument that they are only seeking to enforce pre-existing anti-discrimination laws, there cannot be any chill on agency action. Even if there were any such chill, at this stage it does not outweigh the strong public interest in upholding CWIT's constitutional rights. *See Washington v. Trump*, Case, No. 2:25-cv-00244-LK, 2025 WL 509617, at *14 (W.D. Wash. Feb. 16, 2025); *see also PFLAG, Inc. v. Trump*, 766 F. Supp. 3d. 535, 573-74 (D. Md. Feb. 14, 2025).

Conversely, absent the preliminary injunction, CWIT will be irreparably harmed by unconstitutional infringements on their First Amendment rights and by severe losses that threaten their operations and existence. Staying or narrowing the preliminary injunction would further chill First Amendment protected speech of CWIT and other DEI-driven organizations they partner with. SA 25-26.

Although issued before the Supreme Court's decision, the district court's findings and the scope of the injunction are consistent with the dictates of *Trump v. CASA, Inc.* As *CASA* notes, "[t]he equitable tradition has long embraced the rule that courts generally 'may administer complete relief between the parties.'" 606 U.S. at 851 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U. S. 488, 507 (1928) (emphasis deleted)).

Appellants contend, however, that the injunction flouts *CASA* because its scope is not necessary to afford CWIT complete relief. Instead, they claim the injunction is "designed to benefit third parties who are not before the court." App. Br. at 35.

But Appellants concede, correctly, that injunctive relief need not categorically exclude persons other than the parties. App. Br. at 34. That others receive an incidental benefit from an injunction does not run afoul of *CASA*. *See* 606 U.S. at 851.

Moreover, the district court's findings reflect that it specifically designed the injunction to provide full relief to CWIT—for example, by limiting the injunction to DOL. Nonetheless, the court noted CWIT works with other organizations that may also provide what the

government deems DEI-related programming. Thus, without a nationwide injunction, the court found that "*CWIT* will not be able to work with other recipients or sub-recipients unless they also eliminate whatever may be considered as DEI-related efforts." SA 46 (emphasis added). In this same vein, the court concluded that a preliminary injunction limited to CWIT "still would impact any prospective grant recipient who might want to work with *CWIT*," and any steps required of a prospective grantee would lead to "a strong likelihood that the prospect of such disclosure [of non-grant related advocacy related to DEI] would chill any prospective fund recipient from partnering with *CWIT*." SA 47 (emphasis added). "In such situations, *CWIT* would suffer the consequences." SA 47 (emphasis added).

Thus, the court did not clearly err when it concluded that the threat of enforcement of the Certification Provision against any DOL grantee directly harms CWIT in both its existing and future partnerships. And, in light of these findings, Appellants argument that "it would be straightforward to provide relief to CWIT without incidentally benefiting everyone else," falls short. App. Br. at 38.

Nor is there merit to Appellants' contention that CWIT's interest in future partnership is "speculat[ive], with no basis in the record." App. Br. at 38. This argument ignores that CWIT lost at least one partnerships after the EOs issued due to fear of triggering the EOs and losing federal funding. GA 29; GA 84; GA 91; *see also* Statement of Facts § C.

Finally, Appellants' recent actions reinforce this reality. The Justice Department in May announced the "Civil Rights Fraud Initiative" which promises "vigorous enforcement of the False Claims Act" against funding recipients who violate civil rights laws "through diversity, equity, and inclusion (DEI) programs that assign benefits or burdens on race[.]" DOJ, Mem. from Todd Blanche, Deputy Att'y Gen., re Civil Rights Fraud Initiative, at 1 (May 19, 2025), https://perma.cc/P7SV-DGUG.[7] The Justice Department also issued "guidance clarif[ying] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI')

---

[7] CWIT also requests that this Court take judicial notice of this public record. *See In re Lisse*, 905 F.3d at 496-97.

programs." DOJ, Mem. from Pam Bondi, Att'y Gen., to all Fed.

Agencies, re Guidance for Recipients of Federal Funding Regarding

Unlawful Discrimination, at 1 (July 29, 2025), https://perma.cc/K4PG-

BJ2F. This guidance directs federal funding recipients to "[m]onitor

third parties that receive federal funds to ensure ongoing compliance,"

and to "[t]erminate funding for noncompliant programs." *Id.* at 9. It

does not specify that compliance obligations do not flow to third parties.

The district court's preliminary injunction is thus necessary to secure

complete relief for CWIT considering DOJ's enforcement threats and

focus on grant recipients' relationship with third parties.

## CONCLUSION

For the reasons stated, the district court decision should be

affirmed.

| | |
|---|---|
| Sabrina A. Talukder | /s/ Warrington S. Parker III |
| Kathryn J. Youker | Warrington S. Parker III |
| Dariely Rodriguez | CROWELL & MORING LLP |
| LAWYERS' COMMITTEE FOR CIVIL | 3 Embarcadero Center, |
| RIGHTS UNDER LAW | 26th Floor |
| 1500 K Street, N.W. Suite 900 | San Francisco, CA 94111 |
| Washington, D.C. 20005 | (415) 986-2800 |
| Telephone: (202) 662-8600 | wparker@crowell.com |
| Facsimile: (202) 783-0857 | |
| stalukder@lawyerscommittee.org | Jason P. Stiehl |
| kyouker@lawyerscommittee.org | CROWELL & MORING LLP |
| drodriguez@lawyerscommittee.org | 455 N. Cityfront Plaza Dr., |

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
CHICAGO LAWYERS' COMMITTEE FOR
CIVIL RIGHTS
100 N. LaSalle St., Ste. 600
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

Elizabeth E. Theran
NATIONAL WOMEN'S LAW CENTER
1350 I Street NW, Suite 700
Washington, DC 20005
Telephone: (202) 588-5180
Fax: (202) 588-5185
etheran@nwlc.org

Suite 3600
Chicago, IL 60611
(312) 840-3108
jstiehl@crowell.com

Anuj Vohra
Keith J. Harrison
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624-2500
avohra@crowell.com
kharrison@crowell.com

Meshach Y. Rhoades
CROWELL & MORING LLP
1601 Wewatta Street
Suite 815
Denver, CO 80202
(303) 524-8660
mrhoades@crowell.com

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation contained in Fed. R. App. P. 32(a)(7) because, excluding the portions exempted by Rule 32(f), this brief contains 9008 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

/s/ Warrington S. Parker III
Warrington S. Parker III

**CERTIFICATE OF SERVICE**

I certify that on September 17, 2025, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Seventh Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Warrington S. Parker III
Warrington S. Parker III